836 F.2d 548
 24 Fed. R. Evid. Serv. 467
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Deseret SMITH, Defendant-Appellant.
 No. 87-5507.
 United States Court of Appeals, Fourth Circuit.
 Argued July 1, 1987.
Decided Dec. 18, 1987.
 
 Thomas Walsh Fraquhar for appellant.
 William Graham Otis, Assistant United States Attorney (Henry E. Hudson, United States Attorney on brief) for appellee.
 Before JAMES DICKSON PHILLIPS, ERVIN, and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Appellant Deseret M. Smith was convicted following a jury trial in United States District Court for the Eastern District of Virginia of embezzling approximately $7,500 from the Central Fidelity Bank in Vienna, Va. in 1981. She appealed and we affirm.
 
 
 2
 The government presented an overwhelming circumstantial case against Smith. There was evidence that Smith, a bank employee for several months at Central Fidelity, worked in 1981 at a "walk-up teller window." On a Monday morning, the bank manager discovered money missing from the walk-up teller cash drawer and safe. Smith had worked on Saturday, but did not show up for work on the following Monday and left no explanation. She was not living at the address listed on her employment application and never claimed her final paycheck. Bank employees testified that due to the bank's internal security system no one but Smith could have gained access to the missing money. Smith was arrested in October 1986 at Kennedy International Airport. She claimed to have been living in Israel since 1981 and that she had suddenly left her bank employment because she was depressed and "wasn't receiving any self-fulfillment."
 
 
 3
 The government's last witness was Alvin Scott, a former "head of security" for the Black Hebrews. Scott testified that he had known Smith when both were members of the group in 1981. He went on to testify, over defense objection, to the beliefs of the Black Hebrews and to various illegal means the Black Hebrews commonly used to generate funds for "the Nation," including the use of women as bank tellers. Later, after Smith testified in her own behalf and denied any affiliation with the Black Hebrews in 1981, the government called Ms. Warrena Bostic, who testified as a rebuttal witness that she and Smith lived in a Black Hebrew home in Washington, D.C. during the summer of 1981.
 
 
 4
 Following her conviction by a jury, Smith took this appeal.
 
 
 5
 Smith's principal challenge to her conviction is directed at the evidence related to her Black Hebrew connection. She argues that this evidence invited the jury to convict her on the basis of her association with a group generally associated with criminal activity. She argues that the evidence was irrelevant and was introduced to prove the bad character and propensity to commit crimes of the Black Hebrews in violation of Fed.R.Evid. 404. She further argues that in any event the prejudicial impact of the testimony clearly outweighed any probative effect so that its admission was improper under Fed.R.Evid. 403.
 
 
 6
 While the government's tactical decision to introduce this evidence may raise questions in view of the substantiality of its case already amde, that is not of course the question before us. Analyzing the ruling as simply one balancing relevance and probative weight against unfair prejudice under Fed.R.Evid. 403, we cannot find an abuse of discretion in the decision to let it in. Its relevance, given the liberality with which that concept is defined by Rule 401, is obvious. Smith's defense was that she did not do the deed. This evidence surely had some tendency to make her culpability "more probable ... than it would have been without the evidence." Fed.R.Evid. 401. While the balance of its probative value against its danger of "unfair prejudice" under Rule 403 may be a near thing, we cannot find the district court's conclusion that probative value was not "substantially outweighed" by the danger of unfair prejudice so questionable as to amount to an abuse of discretion. The other evidence against Smith, while substantial, was all circumstantial. The evidence of her affiliation with the Black Hebrew group and a modus operandi of that group consistent with the government's uncomplicated theory of Smith's guilt had undoubted probative value, possibly critical to rounding out the other circumstantial evidence against her. There was undoubtedly some danger of unfair prejudice here, but we cannot say that it so "substantially outweighed" the probative value of the evidence that the court could not properly admit it.[1]
 
 
 7
 Courts have upheld the admission of comparable group modus operandi evidence in generally similar circumstances, see United States v. Hattaway, 740 F.2d 1419, 1425 (7th Cir.1984) (motorcycle gang "lifestyle"); United States v. Harrell, 737 F.2d 971, 977-78 (11th Cir.1984) (same). We agree with those decisions and think this case falls within the range of discretion implied in them.[2]
 
 
 8
 Accordingly we affirm the conviction.
 
 
 9
 AFFIRMED.
 
 
 
 [1]
 The risk of unfair prejudice was to some extent reduced by the government's specific caution on closing argument that the evidence had no relevance save as it tended to prove Smith's guilt of the crime charged; that "the Black Hebrews are not on trial." The defendant made no request for a specifically limiting instruction by the court to that same effect See United States v. Echeverri v. Jaramillo, 777 F.2d 933, 936-37 (4th Cir.1985)
 
 
 [2]
 The parties also have argued the admissibility of this evidence under Fed.R.Evid. 404(b). Because we doubt the direct relevance of that "prior bad acts" rule to the ruling here in issue, we confine our consideration to its admissibility under Fed.R.Civ.P. 403. If 404(b) were implicated, our analysis would be the same, considering that the evidence was admissible in the court's discretion to show intent, since that was at least implicitly in issue, rather than mere propensity